**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **RANDALL SCHRUM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.** |
| | ) | |
| **COLIN CAMPBELL,** | ) | **JURY DEMANDED** |
| **NANCY CAMPBELL,** | ) | |
| **MARK HARRISON,** | ) | |
| **ERIN HARRISON,** | ) | |
| **EVANGELINE JOHNSON,** | ) | |
| **WESLEY EUGENE CAMPBELL,** | ) | |
| **ROCKLYNN CAMPBELL,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JOHN AND JANE DOES NOS. 1-20,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Randall Schrum ("Schrum"), by and through his undersigned attorneys, and for his Complaint for Damages and Injunctive Relief against Colin Campbell ("Colin"), Nancy Campbell ("Nancy"), Mark Harrison ("Mark"), Erin Harrison ("Erin" and, with Mark, the "Harrisons"), Evangeline Johnson ("Vange"), Wesley Eugene Campbell ("Wes"), , Rocklynn Campbell ("Rocky") and John and Jane Does Nos. 1-20 (collectively, "Defendants"), states as follows:

1.      As discussed and defined further below, Schrum became a member and then a leader of the religious organization and community Hilltop Fellowship. As part of that leadership, Schrum became a member of a group that provided guidance to the entire Hilltop Fellowship community, including its pastor and founder, Colin Campbell. This leadership group was formed

so that important decisions affecting the entirety of Hilltop Fellowship could be made through deliberation and unified consensus (as opposed to the unilateral decisions of a single individual).

2. Notwithstanding the purpose of the leadership group, when a decision was made by consensus that affected his own daughter, Colin vehemently opposed the decision (and every other leader of Hilltop Fellowship). And what is worse, Colin and his family attacked the Hilltop Fellowship leaders. Colin drove the leadership and members of Hilltop Fellowship away and then accused others, including Schrum of somehow stealing "his" church from him. Even after Schrum willingly resigned from Hilltop Fellowship, the attacks continued and were clearly targeted to defame Schrum and interfere with a new independent religious organization, Refuge Ridge, that Schrum has helped to organize.

3. Schrum brings this lawsuit to defend his Constitutional rights; recover the physical, emotional, financial and reputational damages inflicted upon him by Defendants and those acting in concert and/or conspiracy with Defendants; and, finally, to enjoin the further wrongful acts of Defendants that have not only targeted Schrum, but his family as well.

## PARTIES, JURISDICTION AND VENUE

4. Schrum is a resident of the State of Tennessee with his principal place of residence located in Hickman County, Tennessee.

5. Colin is a resident of the State of Tennessee with his principal place of residence located in Hickman County, Tennessee. Colin and his wife, Nancy, are the founders of Hilltop Fellowship House of Prayer, which is an unaffiliated Christian religious organization located in Hickman County, Tennessee (hereafter, "Hilltop Fellowship"). Colin may be served at 8875 Primm Springs Rd, Primm Springs, Tennessee 38476.

6. Nancy is a resident of the State of Tennessee with her principal place of residence located in Hickman County, Tennessee. As noted above, Nancy founded Hilltop Fellowship with

2

SL 7004745.4

her husband, Colin.  Nancy may be served at 8875 Primm Springs Rd, Primm Springs, Tennessee 38476

7. Mark is a resident of the State of Tennessee with his principal place of residence located in Hickman County, Tennessee.  Mark is a former member of Hilltop Fellowship; however, prior to the events of this lawsuit, Mark still regularly socialized and affiliated with members of Hilltop Fellowship, including Colin and Nancy.  Mark may be served at may be served at 8228 Beech Valley Rd, Primm Springs, Tennessee 38476.

8. Erin is a resident of the State of Tennessee with her principal place of residence located in Hickman County, Tennessee.  Erin is Mark's wife and is a former member of Hilltop Fellowship; however, prior to the events of this lawsuit, Erin still regularly socialized and affiliated with members of Hilltop Fellowship, including Colin and Nancy.  Erin may be served at 8228 Beech Valley Rd, Primm Springs, Tennessee 38476.

9. Upon information and belief, Erin and Mark (i.e., the Harrisons) both joined Hilltop Fellowship notwithstanding they had been forced to leave a prior religious community due to their abusive behavior, including conduct similar to the allegations asserted herein.

10. Vange is a resident of the State of Tennessee with her principal place of residence located in Hickman County, Tennessee.  Vange is the daughter of Colin and Nancy and a member of Hilltop Fellowship.  Vange may be served at 8879 Primm Springs Rd, Primm Springs, Tennessee 38476.

11. Wes is a resident of the State of Tennessee with his principal place of residence located in Williamson County, Tennessee.  Wes is the son of Colin and Nancy and the brother of Vange.  Wes may be served at 336 White Swans Xing, Brentwood, Tennessee 37027.

SL 7004745.4

12.    Upon information and belief, Rocky is a resident of the State of Tennessee with his principal place of residence located in Williamson County, Tennessee.  Rocky is the son of Colin and Nancy and the brother of Vange and Wes.  Upon information and belief, Rocky lives at a property owned by Wes.  Rocky may be served at 336 White Swans Xing, Brentwood, Tennessee 37027.

13.    Upon information and belief, the as yet to be identified John and Jane Does Nos. 1-20, are residents of the State of Tennessee.

14.    Subject matter jurisdiction is proper within U.S. District Court, because Counts I and II of this Complaint for Damages and Injunctive Relief (the "Complaint") arise under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1985(2), respectively.  Accordingly, this dispute presents a federal question for resolution and invokes this Court's federal question jurisdiction.  See 28 U.S.C. § 1331.

15.    Subject matter jurisdiction is also proper with respect to the remaining claims, i.e. Counts III-X of this Complaint because as all such claims share a common nucleus of operative facts with Counts I and II.  Accordingly, this Court has supplemental jurisdiction over such claims. See 28 U.S.C. § 1367.

16.    This Court possesses personal jurisdiction over the Defendants, because all of the conduct at issue took place within the State of Tennessee, all of Schrum's injuries were felt in the State of Tennessee, and all of the named Defendants are Tennessee residents.

17.    Venue is proper in this District, pursuant to 28 U.S.C. § 1391, as all named Defendants reside within the Middle District of Tennessee.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

## I.    COLIN AND NANCY CREATE HILLTOP FELLOWSHIP

4

SL 7004745.4

18.     Beginning around 2008, Colin and Nancy held or began taking part in religious services and/or meetings under the name "House of Prayer" at various locations in Tennessee. In January of 2021, these informal services and meetings were formalized by Colin and Nancy as an independent religious organization and Hilltop Fellowship was created. Colin has continuously served as lead pastor of Hilltop Fellowship since its creation.

19.     As an independent and unaffiliated religious organization, Hilltop Fellowship does not associate with or belong to a larger organized denomination of Christianity. It is effectively a grass-roots religious organization with no formal affiliations with other or larger religious organizations. It meets at a single location and is governed by its own set of self-imposed rules.

20.     Hilltop Fellowship includes a shared community that goes beyond religious services and/or meetings. Indeed, members of Hilltop Fellowship socialize together with one another, prepare and eat meals together and even share in and support one another in their domestic lives. For instance, members of Hilltop Fellowship financially support one another and participate in homeschooling and educational community programs to support the children within Hilltop Fellowship. Members of Hilltop Fellowship even seek to live on adjoining parcels of land and regularly host other members to live on their own land, all in an effort to support and encourage the communal aspects of Hilltop Fellowship.

## II.     <u>SCHRUM JOINS HILLTOP FELLOWSHIP</u>

21.     In March of 2022, Schrum joined Hilltop Fellowship with his wife and four (4) young children.

22.     Consistent with and in furtherance of Hilltop Fellowship's communal mission, Schrum and his family became active in all aspects of Hilltop Fellowship almost immediately, including participating in its religious and social activities throughout the week.

SL 7004745.4

23. From approximately March 2022 through April 2025, Schrum and his family attended church services at Hilltop Fellowship three (3) to four (4) times per week.

24. Schrum and his family also befriended and socialized with members of Hilltop Fellowship and regularly joined with members of the community in their homes for bible studies, prayer and other community activities.

25. Schrum supported Hilltop Fellowship both financially and through acts of service, including preaching and prayer, furnishing and repairing homes of members and even providing mentorship and leadership on spiritual, career and business matters.

26. Schrum also supported the Hilltop Fellowship community financially, including giving as much as fifty percent (50%) of his income to Hilltop Fellowship, to meet the needs of both the church and its members.

27. Schrum's financial contributions towards the needs of Hilltop Fellowship and its members was substantial—multiples greater than any traditional notion of tithing—and included, but was certainly not limited to, the following:

    (a) Providing services and items of value for the benefit of Colin and Nancy, including as follows:

        (i) providing twelve thousand dollars ($12,000) to Colin in the summer of 2024 for a used Ford Expedition to replace his prior vehicle;

        (ii) securing counseling services for Vange (the daughter of Colin and Nancy and a member of Hilltop Fellowship), valued at approximately three thousand five hundred dollars ($3,500);

        (iii) providing HVAC parts and repair services, in the amount of approximately four thousand dollars ($4,000) for Colin and Nancy;

        (iv) providing plumbing and water line parts and repair services—including running thousands of feet of water line, providing pump replacements and other parts and renting heavy equipment—in the amount of approximately five thousand dollars ($5,000) for Colin and Nancy;

6

(v) providing basement and kitchen renovation parts and services—including updating electrical components and systems, replacing light fixtures and ceiling panels and painting—in the amount of approximately six thousand dollars ($6,000) for Colin and Nancy;

(vi) providing septic system parts and repair services—including repairing septic lines and pumping the septic tank—in the amount of approximately one thousand five hundred dollars ($1,500) for Colin and Nancy;

(vii) providing computer maintenance services and computer equipment—including networking cables, keyboards and office computers themselves—in the amount of approximately two thousand ($2,000) to support Nancy's separate ministry, Above Rubies;

(viii) incurring time and money, in the amount of approximately five hundred dollars ($500), to travel to Poplar Bluff, Missouri to pick up Colin and Nancy after their car broke down; and

(ix) providing pest control services in the amount of approximately four thousand dollars ($4,000) for the home of Colin and Nancy;

(b) Providing services and items of value for the benefit of other members of Hilltop Fellowship, including as follows:

(i) incurring time and expenses in the amount of approximately one thousand ($1,000) to install a fireplace for Hilltop Fellowship members Mike Gronas and Leana Gronas;

(ii) incurring time and expenses in the amount of approximately three thousand dollars ($3,000) to secure heavy equipment and raze land for Hilltop Fellowship members Paul Ajayi and Jessica Ajayi;

(iii) building a two-bedroom lofted cabin for Hilltop Fellowship members Paul Ajayi and Jessica Ajayi valued at approximately twenty-five thousand dollars ($25,000); and

(iv) providing ongoing care and financial support for a member and her children, after one of her children received a terminal cancer diagnosis, valued at approximately at five thousand dollars ($5,000);

(c) Leading and financially backing initiatives of Hilltop Fellowship, including as follows:

(i) Leading and incurring approximately four thousand dollars ($4,000) in expenses to financially support a Hilltop Fellowship mission trip to Mexico—including paying for expenses and building materials;

7

SL 7004745.4

(ii)   Leading and incurring approximately one thousand dollars ($1,000) in expenses to financially support a Hilltop Fellowship mission trip to Indiana to help a family whose home caught fire;

(iii)  Leading and incurring approximately one thousand five hundred dollars ($1,500) in expenses to financially support a Hilltop Fellowship mission trip to North Carolina to help with devastating flood damages;

(iv)   Leading and incurring approximately fifteen thousand dollars ($15,000) in expenses to financially support a Hilltop Fellowship Father Son Weekend Camp in 2023 and 2024.

28.    Consistent with and because of Schrum's contributions to Hilltop Fellowship and its members, Schrum assumed a leadership position within Hilltop Fellowship and received the formal distinction of a Hilltop Fellowship Elder.

29.    As an Elder of Hilltop Fellowship, Schrum served the Hilltop Fellowship church and community in numerous ways, including providing moral and spiritual leadership; teaching and preaching within the community; praying and caring for members of the community; modeling behavior consistent with the beliefs of Hilltop Fellowship; and even providing guidance and accountability to members of Hilltop Fellowship, to ensure that their own conduct was consistent with the beliefs of Hilltop Fellowship.

30.    In addition to Schrum, one (1) other member of Hilltop Fellowship was formally recognized as an Elder and four (4) other members served as Hilltop Fellowship Elders despite never formally receiving such appointment (collectively, the "Hilltop Leadership"). Each member of the Hilltop Leadership served the Hilltop Fellowship church and community in various capacities according to their own abilities and the needs of Hilltop Fellowship.

31.    In addition to the Hilltop Leadership, Colin—as the pastor and founder of Hilltop Fellowship—also served the Hilltop Fellowship and its members, including by exemplifying behavior consistent with the beliefs of Hilltop Fellowship.

8

SL 7004745.4

32. The establishment of the Hilltop Leadership was to ensure that no single member of Hilltop Fellowship could exercise unilateral authority over Hilltop Fellowship and issues affecting the church and community, not even Colin.

33. Instead, the goal of the Hilltop Leadership was to provide leadership, oversight and accountability, including on spiritual issues, by consensus and as a unified group for the benefit of Hilltop Fellowship.

### III.   COLIN FAILS TO ADDRESS VANGE'S IMPROPER CONDUCT

34. As noted above, Vange is the daughter of Colin and Nancy and is a member of Hilltop Fellowship.

35. In December of 2023, Vange abruptly stopped attending Hilltop Fellowship services but remained a member of the community.

36. In January of 2024, the Hilltop Leadership became aware of allegations that Vange was engaging in behavior, with respect to her own marriage, that was wholly inconsistent with the beliefs and practices of Hilltop Fellowship. The Hilltop Leadership independently and confidentially investigated these allegations and found them to be with merit.

37. The Hilltop Leadership—consistent with the values and procedures of Hilltop Fellowship—began a process of prayer, discernment and reconciliation, which was designed to fully restore Vange as a member of Hilltop Fellowship and align her with the faith-based principles adhered to by all members of Hilltop Fellowship.

38. This reconciliation process undertaken by Hilltop Leadership took place over the course of more than a year and included Schrum's efforts to secure (and pay for) counseling for Vange and her husband.

9

SL 7004745.4

39. Despite the best efforts of the Hilltop Leadership, all attempts to reconcile Vange with Hilltop Fellowship and the faith-based principles adhered to by its members were unsuccessful.

40. Because Vange was still benefitting from and supported by the community of Hilltop Fellowship (including financially), but had rebuffed all efforts to restore herself and align her conduct with the beliefs of that same community, the Hilltop Leadership began a process to formally reproach her and establish consequences with regard to her continued participation as a member of Hilltop Fellowship.

41. To be clear, similar to the extensive process of reconciliation undertaken by the Hilltop Leadership, the goal of such reproach and consequences was also ultimately intended to restore Vange as a full member of Hilltop Fellowship and align her conduct with the faith-based principles adhered to by every member of Hilltop Fellowship.

42. Colin opposed the actions and conclusions of the Hilltop Leadership, not because they were false or inconsistent with the beliefs and practices of Hilltop Fellowship—indeed Colin had agreed with similar responses to similarly errant behavior in the past—but because they involved his daughter, Vange.

43. In response to Colin's opposition—which was both hypocritical and constituted a dereliction of his duties as the pastor of Hilltop Fellowship—the Hilltop Leadership issued a confidential report that outlined (1) Vange's conduct; (2) the efforts of Hilltop Leadership to address the same; and (3) the negative consequences, including under biblical scripture, that the Hilltop Leadership believed would befall Hilltop Fellowship if Colin refused to address his daughter's conduct and continued to treat her differently than every other single member of Hilltop Fellowship (hereafter, the "Confidential Report").

SL 7004745.4

44.     Similar to its approach to Vange, the Hilltop Leadership issued the Confidential Report to Colin with the ultimate goal that he would listen to their counsel, fully restore himself as a member (and leader) of Hilltop Fellowship and align his conduct with the faith-based principles adhered to by the members of Hilltop Fellowship.

45.     This did not happen.  Instead, Colin; his wife (Nancy); his children (Wes, Vange and Rocky); and former members of Hilltop Fellowship loyal to Colin (the Harrisons) undertook a campaign—both individually and in concert and conspiracy with one another and the yet unnamed John and Jane Does Nos. 1-20—to harass, attack and defame both Schrum and the other members of the Hilltop Leadership.

46.     The objective of this conspiracy, and the attacks carried out in furtherance thereof, is to (1) impugn the integrity and reputation of Schrum; (2) jeopardize Schrum's livelihood; (3) prevent and/or intimidate Schrum from participating in other worship and faith-based communities, including Refuge Ridge (defined below); and (4) even cause Schrum and his family—including Schrum's young children and his wife (pregnant with twins)—physical and emotional distress and displace them from their family home.

## IV.     THE CAMPBELL FAMILY CONSPIRES TO ATTACK SCHRUM

47.     As noted above, the Confidential Report—as well as all notes, memoranda and discussions that accompanied the Hilltop Leadership's effort to reconcile, restore and ultimately reproach Vange—were held in the strictest of confidences by the Hilltop Leadership.

48.     Such confidentiality was expressly agreed to, consistent with the procedures of Hilltop Fellowship and designed to protect the welfare and dignity of the individuals involved, including Vange, Colin and the members of the Hilltop Leadership themselves.

49.     The Confidential Report was provided to Colin on March 22, 2025.

11

50.     As early as March 27, 2025, Colin was improperly sharing the facts and circumstances surrounding the Confidential Report, as well as content (albeit selectively) from the Confidential Report, including the Hilltop Leadership's efforts to resolve the issues with Vange through prayer, discernment, reconciliation, alignment and eventually reproach.

51.     It bears repeating: the purpose of the Hilltop Leadership was to provide leadership, oversight and accountability, including on spiritual issuers, as a unified group for the benefit of Hilltop Fellowship.

52.     However, upon information and belief, Colin selectively disclosed—or outright misrepresented—the facts and circumstances surrounding the Confidential Report to discredit and disparage the Hilltop Leadership, simply because he disagreed with them and the matter involved his own daughter, Vange.

### A. THE MARCH 30 SERVICE

53.     At the first Sunday service following the Confidential Report, on March 30, 2025 (the "March 30 Service"), Colin's son and Vange's brother, Rocky, attended Hilltop Fellowship service with a "mob" of approximately fifteen (15) other family members who were not members of Hilltop Fellowship.

54.     The March 30 Service was attended by approximately seventy-five (75) actual members of Hilltop Fellowship, including Schrum's wife (pregnant with twins) and four (4) young children.

55.     During the March 30 Service, Rocky publicly screamed threats at Schrum and the Hilltop Leadership in front of the entire Hilltop Fellowship membership.

56.     The threats directed at Schrum included, but were not limited to:

(a)     "I'm going to get you;"

(b)     "I will come after you;"

12

(c)     "I will be on you;" and

(d)     "If you don't back down, you'll regret it."

57.     Rocky also defamed Schrum by screaming—again during the March 30 Service and in front of the Hilltop Fellowship community—that Schrum's actions in connection with the Confidential Report were financially driven ("this is about money"), immoral ("what you are doing is evil") and designed to "steal" Hilltop Fellowship from Colin.

58.     The "mob" of Colin's and Rocky's family members—who clearly attended to intimidate both Schrum and the Hilltop Leadership—clamored in support of these threats and false accusations.

59.     To the utter shock of the Hilltop Leadership and the Hilltop Fellowship community, Colin did not tell his "mob" of family members to leave the March 30 Service or rebuke them for their inappropriate and outlandish behavior.

60.     Instead, Colin communicated his agreement with, support of and appreciation for the actions of Rocky and his "mob" of family members to the entire Hilltop Fellowship community.

61.     Unlike the Confidential Report, which was held in the strictest of confidences to protect the welfare and dignity of its subjects—including Colin and Vange—the conduct of Colin and Rocky at the March 30 Service was designed to attack the welfare and dignity of Schrum and the Hilltop Leadership as publicly as possible, to the entire Hilltop Fellowship (including Schrum's wife and children).

**B.      THE RESIGNATION OF THE HILLTOP LEADERSHIP**

62.     In response to the events of the March 30 Service, the Hilltop Leadership drafted a letter to Colin on March 31, 2025, immediately resigning their membership and any and all positions within Hilltop Fellowship (the "Resignation Letter").

63.     Colin received the Resignation Letter on April 1, 2025.

64.     The Resignation Letter also disclosed the intent of the Hilltop Leadership to begin meeting for religious services and meetings, separate and apart from Hilltop Fellowship.

65.     Beginning in April 2025, Schrum and the other former members of Hilltop Leadership, along with their own families, as well as families who also left Hilltop Fellowship in response to the events that transpired at the March 30 Service, began to meet regularly for church service as part of a new and independent religious organization called Refuge Ridge Fellowship ("Refuge Ridge").

66.     As of the date of this filing, Refuge Ridge has held regular and continuous meetings, activities and worship services since the beginning of April 2025.

67.     Upon information and belief, the departure of Schrum, the Hilltop Leadership and many other individuals—totaling approximately seventy (70) members of Hilltop Fellowship—deeply angered Defendants and sparked a series of additional bad acts targeted against Schrum.

**C.     DEFAMATION OF SCHRUM BY THE CAMPBELL FAMILY**

68.     Preceding and following the events of the March 30 Service and the Resignation Letter, Colin, Nancy, Wes, Vange and Rocky (the "Campbell Family") either directly defamed or conspired to defame Schrum.

69.     Colin and Nancy—in both e-mail correspondence and oral statements to current and former members of Hilltop Fellowship—falsely accused Schrum of "stealing" Hilltop Fellowship from the Campbell Family.

70.     Wes—in oral communications to current and former members of Hilltop Fellowship—also falsely accused Schrum of "stealing" Hilltop Fellowship.

14

SL 7004745.4

71.     Wes also falsely stated—in oral communications to current and former members of Hilltop Fellowship *and* Hilltop Leadership—that Schrum was "running things" and had a "questionable history."

72.     On April 3, 2025, Colin, Nancy and Wes met with former members of Hilltop Fellowship (and current members of Refuge Ridge) where they stated additional false and defamatory statements against Schrum and Hilltop Leadership.

73.     Specifically, and during that evening, Colin stated to those present that Schrum was "stealing the church." Nancy repeated those statements and stated that Schrum "is a liar."

74.     Colin and Nancy also each claimed that Schrum had "manipulated the church and its leaders" and that Schrum and the other former members of Hilltop Leadership had "stolen the church" from Colin and Nancy.

75.     Colin, Nancy and Wes also attempted to prevent Schrum from attending a Christian Family Retreat in April 2025—that had been attended by Schrum and his family for years. Specifically, Colin, Nancy and Wes made the false allegations that Schrum was "stealing" Hilltop Fellowship and also "stealing" Nancy's separate ministry (Above Rubies) to individuals who were planning to attend the retreat. Then, at the retreat itself, Colin and Nancy repeated those falsehoods to individuals in attendance.

76.     Notably, the Harrisons (i.e. Mark Harrison and Erin Harrison) joined in and committed acts in furtherance of the Campbell Family's conspiracy to defame Schrum.

77.     Specifically, on or about April 1, 2025, the Harrisons started a group text message thread, in which Mark and Erin selectively and misleadingly disseminated a small portion of the Confidential Report out of context. This selective and misleading disclosure attempted to

SL 7004745.4

mischaracterize the section of the Confidential Report that analyzed biblical scripture as some kind of threat against Colin.

78.    To be clear, the only way the Harrisons could have disseminated any portion of the Confidential Report would have been if Colin had improperly shared it—either to a member of the Campbell Family or else to the Harrisons directly.

79.    Per the Harrisons, the group chat was expressly created by the Harrisons to "inform the community," including the members of Hilltop Fellowship, and surrounding communities of faith and worship, so that others would "rebuke" Schrum based upon the false statements published therein.  The group text included approximately nineteen (19) individuals, including current and former members of the Hilltop Fellowship.

80.    Within the group text message, the following individuals made the following false and defamatory statements regarding Schrum:

> (a)    Mark and Erin falsely stated that Schrum had issued a "demonic assault" upon and a "curse" against Colin, based on their selective disclosure of the Confidential Report;
>
> (b)    Mark and Erin falsely stated that Schrum is a "Con Artist;"
>
> (c)    Mark, Erin, and Rocky falsely accused Schrum of attempting to take Hilltop Fellowship from Colin and for Schrum's personal benefit;
>
> (d)    Mark and Erin falsely accused Schrum of "stealing" the Hilltop Fellowship login credentials to all social media outlets and websites;
>
> (e)    Rocky falsely accused Schrum of leading a manipulative pressure campaign of a "demonic nature" against Colin;
>
> (f)    Vange falsely accused Schrum of lying to members of Hilltop Fellowship;
>
> (g)    Rocky falsely accused Schrum of "behaving like a village witch doctor;" and
>
> (h)    Erin falsely accused Schrum of engaging in a "devilish campaign against [the] life, legacy and family of Colin Campbell."

16

SL 7004745.4

81.     In addition, Mark and Erin published a falsified Instagram profile bearing Schrum's name which read: "Randy Schrum, Con Artist."

82.     The foregoing statements above within the group text message were false, defamatory and presented Schrum in a false light.

83.     The foregoing false and defamatory statements related directly to Schrum.

84.     The foregoing false and defamatory statements within the group text message were published to at least nineteen (19) separate individuals.

85.     The foregoing false and defamatory Instagram profile, which portrayed Schrum in a false light, was also disseminated to the public at large and countless individuals who had access to the profile through the internet, including Instagram.

**D      ACTS OF INTIMIDATION BY THE CAMPBELL FAMILY**

86.     In the early morning on April 2, 2025—i.e., the morning following Colin's receipt of the Resignation Letter (in which Schrum and the Hilltop Leadership resigned and expressed their intention to begin worship services independent from Hilltop Fellowship)—Schrum's home was stormed by the police.

87.     Specifically, at 3:00 AM on April 2, 2025, Schrum woke to the sound of barking dogs, pounding on his front door and an officer shouting "Sheriff."

88.     When he opened his front door, Schrum was barely able to see the five (5) police cars parked in front of his house past the numerous flashlights pointed at his eyes.

89.     Based on a false report that Schrum was abusing his nine (9) year old daughter, six (6) sheriff's deputies and one (1) Department of Children's Services ("DCS") case worker attempted to enter Schrum's home at 3:00 in the morning. Schrum ultimately allowed one (1)

deputy into his home who demanded to see each of Schrum's four (4) young children and shined flashlights in each of their faces.

90.     Schrum, his pregnant wife, and their young children were terrified.

91.     Schrum has learned only that the false report against him was made by an individual using an anonymous tip hotline.

92.     However, upon information and belief, Vange made a false report to police that Schrum was abusing his nine (9) year old daughter.

93.     Upon information and belief, Colin and Nancy have also admitted to making subsequent false reports to law enforcement that Schrum is abusing one or more of his children.

94.     None of Schrum's children were removed from his home (because the allegations against him were false) and the police found no other evidence of any wrongdoing whatsoever during their April 2, 2025, visit.

95.     After police left—around 4:00 AM on April 2, 2025—Schrum spotted individuals trespassing on his property and running through the woods immediately behind his family home with flashlights.

96.     Later that same morning on April 2, 2025—after the sun had risen—Schrum discovered that one of the tires on his truck had been slashed.

97.     About a week later, on or about April 8, 2025, Mr. Schrum discovered that the tires on his truck had been slashed once again by individuals trespassing on his property.

98.     In addition to the intimidating tactics visited upon Schrum at his own home, the Campbell Family and those acting in conspiracy with them have also targeted services and other gatherings of the newly formed independent religious organization, Refuge Ridge.

18

99.    As of the date of this filing, two (2) uninvited individuals have attended bible studies and prayer meetings of Refuge Ridge.

100.    The first individual was an intern with Nancy's personal ministry (Above Rubies) who actually lived with Colin and Nancy.  After she was caught surreptitiously recording Refuge Ridge services, she did not return.

101.    The second individual, a member of Colin's family, actively tried to intimidate individuals from participating in Refuge Ridge bible studies and prayer meetings of Refuge Ridge.

102.    Upon information and belief, these two (2) uninvited individuals have attended bible studies and prayer meetings of the new Refuge Ridge at the direction of and/or in conspiracy with Defendants, all in an attempt to intimidate Schrum and the former members of Hilltop Fellowship.

## V.    SCHRUM AND HIS FAMILY HAVE SUFFERED DAMAGES

103.    Colin and Nancy, other members of the Campbell family, and their loyalist followers (including the Harrisons), have engaged in a pattern of lawlessness, intimidation, and retaliation, against Schrum and his family.

104.    Such conduct is clearly motivated directly by: (1) their perception that Schrum and others have stolen (or are attempting to steal) the Hilltop Fellowship from them and (2) that Schrum and others have established their own church, separate from Hilltop Fellowship (i.e., Refuge Ridge).

105.    As a result of the retaliation and intimidation set forth above, Schrum and the members of the newly formed Refuge Ridge have been forced to meet in secret, at undisclosed locations and at secret times, because of fears for their mental, emotional, and physical safety.

19

106.    In several instances, the members of the newly formed Refuge Ridge have been unable to meet at all, as a result of the intimidation waged by Colin and Nancy, the Campbell Family, certain other members of their family, and their loyalist followers, including but not limited to the Harrisons.

107.    Thus, the lawlessness, retaliation, and intimidation waged by Defendants have impinged upon the first amendment rights of Randall Schrum, Mr. Schrum's family, and the other members of the newly-formed church, including, but not limited to the following First Amendment rights: (1) freedom of religion; (2) freedom of association; (3) freedom of assembly; and (4) freedom of speech.

108.    In addition, the false reports of child abuse made to law enforcement by Colin, Nancy, Vange and other unidentified John and Jane Does Nos. 1-20, have obstructed justice.

109.    In addition, and as a direct and proximate result of the repeated and sustained pattern of lawlessness, intimidation, and retaliation waged by the individuals above (both together and separately), Schrum and his family have sustained emotional, physical, and financial damages.

110.    Following the April 2, 2025 search by law enforcement and trespass upon their property, Schrum and his wife immediately prepared for Schrum's wife and their four (4) young children to leave the family home – in the middle of the night – while their husband and father, Schrum, stayed behind.

111.    As of the date of this filing, Schrum's wife (pregnant with twins) and his children are now living outside of the family home at an undisclosed location, due to fears for their safety.

112.    Due to travel and living outside of the family home, Schrum's wife has experienced complications with her health and pregnancy, including increased stress, swelling and varicose veins in her legs, and disturbances in sleep.  Schrum's wife has also been prevented from attending

20

SL 7004745.4

regularly scheduled prenatal doctor's appointments; instead, she has had to attend doctor's appointments with providers who are not familiar with her medical background, whenever such providers happen to be available.

113. On or about April 16, 2025, Schrum's wife visited a high-risk pregnancy doctor, ninety (90) minutes away from where she was staying. In order for his wife to even attend the appointment, Schrum had to have all of her records transferred for the appointment, which took hours of work and a charge of $938.00.

114. During the April 16, 2025 appointment, Schrum's unborn babies were diagnosed with Fetal Hydronephrosis, an issue with their kidneys. Upon information and belief, the unborn babies' Fetal Hydronephrosis is believed to be related to the increased stress visited upon Schrum's wife as a result of the bad acts set forth herein.

115. Schrum's wife has also had to travel far distances to attend other doctor's appointments as well, incurring additional physical stress, emotional distress, and costs as a result.

116. Schrum has also incurred additional costs for travel, lodging, food, and other related costs, as a result of his wife and their family living remotely, displaced from their home, for almost two (2) months as of the date of this filing.

117. In addition to the above, Schrum has incurred additional costs to secure his family home. Schrum has expended money to hire paid security personnel to guard the home, money for an updated security system, and money for additional security cameras, among other costs to protect his home, his property, and his family's safety.

118. Schrum has also incurred expenses to repair the slashed and vandalized tires on his truck (twice now).

21

119.     Schrum and all of the members of his family have also experienced, and continue to experience, emotional distress and physical disturbances as a result of the traumatizing events set forth herein.  Specifically, Schrum has experienced stress-related inflammation in his body, including, but not limited to, swelling around his groin, inflamed ankles, and body soreness, for which he has sought medical attention.

120.     Schrum has further experienced a loss of companionship, support, and consortium, as a result of his wife living separately from him for an extended period.

121.     As a result of the bad acts set forth herein, including but not limited to the infringement upon his first amendment rights and the physical, emotional, and financial damages he has sustained, Schrum asserts the following causes of action against Defendants.

### COUNT I – CONSPIRACY TO VIOLATE RIGHTS AND PRIVILEGES IN VIOLATION OF 42 U.S.C. 1985(3)
**(Against All Defendants)**

122.     Schrum restates and realleges all of the foregoing allegations, as if fully set forth herein.

123.     As described more fully above, the named Defendants and yet to be identified John and Jane Does Nos. 1-20 have engaged in a persistent and ongoing campaign to threaten, harass, and intimidate Schrum, his family, and other members of the newly-formed church of Refuge Ridge, established by Schrum and former members of Hilltop Fellowship.

124.     Specifically, the named Defendants and other yet to be identified John and Jane Does Nos. 1-20 (hereinafter "Co-Conspirators"), have conspired together, in a campaign to intimidate Schrum, his family, and other members of Refuge Ridge, from meeting together for church services, and from carrying out other religious activities, as protected under the First Amendment of the United States Constitution.

22

125.    The Co-Conspirators have taken overt acts in furtherance of their conspiracy, as more fully described above, to intimidate Schrum and other members of Refuge Ridge from engaging in protected religious activities, as protected under the First Amendment. Such overt acts include, but are not limited to:

      (a)    Trespassing on Schrum's Property;

      (b)    Vandalizing Schrum's Property;

      (c)    Vandalizing the property of other church members;

      (d)    Issuing defamatory statements against Schrum;

      (e)    Attending meetings, prayer groups, and bible studies held by Refuge Ridge uninvited;

      (f)    Recording meetings, prayer groups, and bible studies held by Refuge Ridge uninvited;

      (g)    Issuing defamatory statements against other church members;

      (h)    Making falsified reports to law enforcement and DCS alleging child abuse against Schrum; and

      (i)    Intimidating Schrum and his family with verbal threats, trespassing, and the destruction of property.

126.    The Co-Conspirators' past and present actions have been motivated by an invidious and discriminatory animus towards those who left Hilltop Fellowship and started Refuge Ridge, including Schrum and his family.

127.    The Co-Conspirators' actions were carried out for the purpose of depriving Schrum and the other members of the newly-formed church of equal protection of the laws and/or equal privileges and immunities under the laws: namely, exercising their First Amendment Rights as they relate to (1) freedom of religion; (2) freedom of association; (3) freedom of assembly; and (4) freedom of speech.

128.    The conduct of Co-Conspirators constitutes violations of 42 U.S.C. 1985(3).

23

SL 7004745.4

129.    As a direct result of the Co-Conspirators' violations, Schrum has suffered both physical and emotional injuries, as more fully described above.

130.    As a direct result of the Co-Conspirators' violations, Schrum has also suffered injuries to his property, as more fully described above.

131.    As a direct result of the Co-Conspirators' violations, Schrum, his family members, and the members of the newly formed church of Refuge Ridge, have also been deprived of (and intimidated from) exercising rights and privileges afforded to citizens of the United States, including, but not limited to, their First Amendment Rights as they relate to (1) freedom of religion; (2) freedom of association; (3) freedom of assembly; and (4) freedom of speech.

WHEREFORE, Plaintiff Randall Schrum respectfully requests that this Court enter judgment in his favor and against Defendants on Count I of the Complaint; for damages, including, but not limited to, actual damages resulting from Defendants' violations; for punitive damages; for nominal damages; for attorney's fees and costs of suit; for injunctive relief to temporarily, preliminarily and permanently enjoin the bad acts of Defendants set forth herein; and for all just and further relief as this Court deems appropriate.

## COUNT II – CONSPIRACY TO OBSTRUCT JUSTICE
## IN VIOLATION OF 42 U.S.C. 1985(2)
### (Against All Defendants)

132.    Schrum restates and realleges all of the foregoing allegations, as if fully set forth herein.

133.    As described more fully above, the Co-Conspirators have engaged in a persistent and ongoing campaign to threaten, harass, and intimidate Schrum, his family, and other members of the newly-formed church of Refuge Ridge, established by Schrum and former members of Hilltop Fellowship.

24

134.    The Co-Conspirators have taken overt acts in furtherance of their conspiracy, as more fully described above. Such overt acts include, but are not limited to: making false statements and accusations to law enforcement and DCS, including the false allegations that Schrum has abused one or more of his children.

135.    The Co-Conspirators' past and present actions have been motivated by an invidious and discriminatory animus towards those who left Hilltop Fellowship and started Refuge Ridge, including Schrum and his family.

136.    The Co-Conspirators' actions were carried out for the purpose of depriving Schrum and the other members of the newly-formed church of equal protection of the laws and/or equal privileges and immunities under the laws: namely, exercising their First Amendment Rights as they relate to (1) freedom of religion; (2) freedom of association; (3) freedom of assembly; and (4) freedom of speech.

137.    The statements and accusations made by the Co-Conspirators, alleging that Schrum has abused one or more of his children, are false and defamatory.

138.    The Co-Conspirators' false and defamatory statements were intended to, and did in fact, obstruct justice.

139.    Specifically, as a result of the false and defamatory statements published by the Co-Conspirators, law enforcement was called to Schrum's home and an investigation has now been opened into Schrum's conduct.

140.    The conduct of the Co-Conspirators constitutes a conspiracy to obstruct justice, in violation of 42 U.S.C. 1985(2).

141.    As a direct result of the Co-Conspirators' violations, Schrum has suffered both physical and emotional injuries, as more fully described above.

SL 7004745.4

142.     As a direct result of the Co-Conspirators' violations, Schrum has also suffered injuries to his property, as more fully described above.

143.     As a direct result of the Co-Conspirators' violations, Schrum, his family members, and the members of the newly formed church of Refuge Ridge, have also been deprived of (and intimidated from) exercising rights and privileges afforded to citizens of the United States, including, but not limited to, their First Amendment Rights as they relate to (1) freedom of religion; (2) freedom of association; (3) freedom of assembly; and (4) freedom of speech.

WHEREFORE, Plaintiff Randall Schrum respectfully requests that this Court enter judgment in his favor and against Defendants on Count II of the Complaint; for damages, including, but not limited to, actual damages resulting from Defendants' violations; for punitive damages; for nominal damages; for attorney's fees and costs of suit; for injunctive relief to temporarily, preliminarily and permanently enjoin the bad acts of Defendants set forth herein; and for all just and further relief as this Court deems appropriate.

### COUNT III – VIOLATION OF TENNESSEE
### HUMAN RIGHTS ACT (SECTION 4 – 21 – 701)
**(Against All Defendants)**

144.     Schrum restates and realleges all of the foregoing allegations, as if fully set forth herein.

145.     The named Defendants and yet to be identified John and Jane Does Nos. 1-20 have acted with retaliatory and intimidating conduct towards Schrum, in an effort to prevent Schrum, his family, and other members of the Refuge Ridge community from worshiping and fellowshipping with the members of the Refuge Ridge community, instead of Hilltop Fellowship.

146.     Defendants' conduct toward Schrum and other members of Refuge Ridge includes, but is not limited to, the following:

(a)     Trespassing on Schrum's Property;

26

SL 7004745.4

(b)    Vandalizing Schrum's Property;

(c)    Vandalizing the property of other church members;

(d)    Issuing defamatory statements against Schrum;

(e)    Attending meetings, prayer groups, and bible studies held by Refuge Ridge uninvited;

(f)    Recording meetings, prayer groups, and bible studies held by Refuge Ridge uninvited;

(g)    Issuing defamatory statements against other church members;

(h)    Making falsified reports to law enforcement and DCS alleging child abuse against Schrum; and

(i)    Intimidating Schrum and his family with verbal threats, trespassing, and the destruction of property.

147.    Defendants' conduct towards Schrum was malicious – that is, it was made with ill-will, hatred or spite.

148.    Defendants have threatened to injure Schrum and other members of Refuge Ridge.

149.    Defendants have also damaged, destroyed, and defaced the personal property of Schrum, including, but not limited to, slashing the tires of Schrum's truck (more than once).

150.    Defendants' malicious conduct has intimidated Schrum, his family, and others within Refuge Ridge from the free exercise of their religion within their new religious community of Refuge Ridge, as more fully set forth above.

151.    Defendants' malicious conduct has also caused Schrum physical and emotional harm, as well as financial harm, as more fully described above.

WHEREFORE, Plaintiff Randall Schrum respectfully requests that this Court enter judgment in his favor and against Defendants on Count III of the Complaint; for damages, including, but not limited to, actual damages resulting from Defendants' violations; for punitive damages; for nominal damages; for attorney's fees and costs of suit; for injunctive relief to

27

SL 7004745.4

temporarily, preliminarily and permanently enjoin the bad acts of Defendants set forth herein; and for all just and further relief as this Court deems appropriate.

**COUNT IV – DEFAMATION**
**(Against All Defendants)**

152. Schrum restates and realleges all of the foregoing allegations, as if fully set forth herein.

153. The named Defendants and yet to be identified John and Jane Does Nos. 1-20 have published statements concerning Schrum.

154. Defendants' false and defamatory statements are more fully described above and include, but are not limited to, the following:

(a) Rocky falsely stating that Schrum's conduct in connection with the Confidential Report was "about money," was "evil" and was designed "steal" Hilltop Fellowship from Colin;

(b) Colin, Nancy and Wes falsely stating, in e-mail correspondence and oral statements, that Schrum was "stealing" Hilltop Fellowship from Colin and/or the Campbell Family;

(c) Wes falsely stating, in e-mail correspondence and oral statements, that Schrum was "running things" and had a "questionable history;"

(d) Colin falsely stating that Schrum was a "liar" and "stealing the church;"

(e) Colin and Nancy false stating that Schrum had "manipulated the church and its leaders" and that Schrum and the other members of the Hilltop Leadership had "stolen the church" from Colin and Nancy;

(f) Colin, Nancy and Wes falsely stating that Schrum was "stealing" both Hilltop Fellowship and Nancy's separate ministry (Above Rubies);

(g) Mark and Erin falsely stated that Schrum had issued a "demonic assault" against, and a "curse" upon, Campbell;

(h) Mark and Erin falsely stated that Schrum is a "Con Artist;"

(i) Mark, Erin, and Rocky falsely accused Schrum of attempting to take Hilltop Fellowship from Colin for himself;

28

(j)     Mark and Erin falsely accused Schrum of "stealing" the Hilltop Fellowship login credentials to all social media outlets and websites;

(k)     Rocky falsely accused Schrum of leading a manipulative pressure campaign against Colin in a "demonic nature;"

(l)     Vange falsely accused Schrum of lying to members of the Hilltop Fellowship community;

(m)     Rocky falsely accused Schrum of "behaving like a village witch doctor;" and

(n)     Erin falsely accused Schrum of engaging in a "devilish campaign against [the] life, legacy and family of Colin Campbell."

155.    Upon information and belief, the individuals mentioned above, and certain John and Jane Does Nos. 1-20, have publicized other statements about Schrum, which will be revealed through discovery.

156.    The statements published by Defendants are false and defamatory.

157.    The Defendants above had knowledge that the statements they published about Schrum were false and defamatory.

158.    The Defendants above exercised a reckless disregard for the truth of the statements and/or exercised negligence in failing to ascertain the truth of the statements.

159.    As a result of the Defendants' conduct, as outlined above, Schrum has suffered damages, including, but not limited to, physical and emotional harm, as well as financial loss, as described more fully above.

WHEREFORE, Plaintiff Randall Schrum respectfully requests that this Court enter judgment in his favor and against Defendants on Count IV of the Complaint; for damages, including, but not limited to, actual damages resulting from Defendants' violations; for punitive damages; for nominal damages; for attorney's fees and costs of suit; for injunctive relief to

29

SL 7004745.4

temporarily, preliminarily and permanently enjoin the bad acts of Defendants set forth herein; and for all just and further relief as this Court deems appropriate.

## COUNT V – FALSE LIGHT
### (Against All Defendants)

160. Schrum restates and realleges all of the foregoing allegations, as if fully set forth herein.

161. The named Defendants and yet to be identified John and Jane Does Nos. 1-20 have all given publicity to matters which placed Schrum in a false light. Specifically, Defendants actions which have placed Schrum in a false light include the following:

(a) Rocky falsely stating that Schrum's conduct in connection with the Confidential Report was "about money," was "evil" and was designed "steal" Hilltop Fellowship from Colin;

(b) Colin, Nancy and Wes falsely stating, in e-mail correspondence and oral statements, that Schrum was "stealing" Hilltop Fellowship from Colin and/or the Campbell Family;

(c) Wes falsely stating, in e-mail correspondence and oral statements, that Schrum was "running things" and had a "questionable history;"

(d) Colin falsely stating that Schrum was a "liar" and "stealing the church;"

(e) Colin and Nancy false stating that Schrum had "manipulated the church and its leaders" and that Schrum and the other members of the Hilltop Leadership had "stolen the church" from Colin and Nancy;

(f) Colin, Nancy and Wes falsely stating that Schrum was "stealing" both Hilltop Fellowship and Nancy's separate ministry (Above Rubies);

(g) Mark and Erin falsely stated that Schrum had issued a "demonic assault" against, and a "curse" upon, Campbell;

(h) Mark and Erin falsely stated that Schrum is a "Con Artist;"

(i) Mark, Erin, and Rocky falsely accused Schrum of attempting to take Hilltop Fellowship from Colin for himself;

(j) Mark and Erin falsely accused Schrum of "stealing" the Hilltop Fellowship login credentials to all social media outlets and websites;

30

SL 7004745.4

(k)     Rocky falsely accused Schrum of leading a manipulative pressure campaign against Colin in a "demonic nature;"

(l)     Vange falsely accused Schrum of lying to members of the Hilltop Fellowship community;

(m)     Rocky falsely accused Schrum of "behaving like a village witch doctor;" and

(n)     Erin falsely accused Schrum of engaging in a "devilish campaign against [the] life, legacy and family of Colin Campbell."

162.    All of the statements above are false and had the effect of casting Schrum in a false light.

163.    The false light in which each of the Defendants placed Schrum would be highly offensive to a reasonable person.

164.    Each of the Defendants knew or acted with a reckless disregard as to the falsity of the statements and matters which they publicized, and further acted with knowledge and/or a reckless disregard to the false light in which Schrum would be placed.

165.    As a result of the Defendants' conduct, as outlined above, Schrum has suffered damages, including, but not limited to, physical and emotional harm, as well as financial loss, as described more fully above.

WHEREFORE, Plaintiff Randall Schrum respectfully requests that this Court enter judgment in his favor and against Defendants on Count V of the Complaint; for damages, including, but not limited to, actual damages resulting from Defendants' violations; for punitive damages; for nominal damages; for attorney's fees and costs of suit; for injunctive relief to temporarily, preliminarily and permanently enjoin the bad acts of Defendants set forth herein; and for all just and further relief as this Court deems appropriate.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

31

166. Schrum restates and realleges all of the foregoing allegations, as if fully set forth herein.

167. The named Defendants and other yet to be identified John and Jane Does Nos. 1-20 engaged in intentional and/or reckless conduct, as more fully described above.

168. Rocky falsely accused Mr. Schrum of attempting to steal the Hilltop Fellowship from Colin. Rocky further issued threats to Schrum, including, but not limited to, "I'm going to get you," "I will come after you," and "I will be on you." Each of these bad acts were committed by Rocky against Schrum in front of the Hilltop Fellowship community, including Schrum's pregnant wife and young children.

169. The Defendants within the text chain made several false and defamatory statements about Schrum, including that he was waging a "demonic assault" and had issued a curse against Colin. Several other like statements were made by the individuals in the text message thread, as more fully described above.

170. Defendants Colin, Nancy, Vange, and yet to be identified John and Jane Does Nos. 1-20, made false statements and allegations, both to Tennessee law enforcement and DCS, falsely alleging that Schrum had abused one or more of his children.

171. The conduct identified above is so outrageous that it is not tolerated by a civil society.

172. The bad acts of Defendants have resulted in serious mental injury to Schrum.

WHEREFORE, Plaintiff Randall Schrum respectfully requests that this Court enter judgment in his favor and against Defendants on Count VI of the Complaint; for damages, including, but not limited to, actual damages resulting from Defendants' violations; for punitive damages; for nominal damages; for attorney's fees and costs of suit; for injunctive relief to

SL 7004745.4

temporarily, preliminarily and permanently enjoin the bad acts of Defendants set forth herein; and for all just and further relief as this Court deems appropriate.

## COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

173.     Schrum restates and realleges all of the foregoing allegations, as if fully set forth herein, including and specifically the foregoing paragraphs contained in Count VI.

174.     The named Defendants and other yet to be identified John and Jane Does Nos. 1-20 had a duty of ordinary care not to cause severe emotional injury to Schrum.

175.     Defendants' conduct, as set forth for fully above and in Count VI, breached their duty of reasonable care not to cause severe emotional injury.

176.     As a direct result of Defendants' conduct, Schrum has suffered severe emotional injuries.

WHEREFORE, Plaintiff Randall Schrum respectfully requests that this Court enter judgment in his favor and against Defendants on Count VII of the Complaint; for damages, including, but not limited to, actual damages resulting from Defendants' violations; for punitive damages; for nominal damages; for attorney's fees and costs of suit; for injunctive relief to temporarily, preliminarily and permanently enjoin the bad acts of Defendants set forth herein; and for all just and further relief as this Court deems appropriate.

## COUNT VIII – TRESPASS (REAL PROPERTY)
### (Against John and Jane Does Nos. 1-20)

177.     Schrum restates and realleges all of the foregoing allegations, as if fully set forth herein.

178.     Count VIII of this Complaint is asserted against the yet to be identified John and Jane Does Nos. 1-20.

33

179. Defendants John and Jane Does Nos. 1-20 intentionally entered onto Schrum's real property on multiple occasions, including, but not limited to, April 2, 2025 and April 8, 2025.

180. Defendants' entry onto Schrum's property was without consent or legal right.

181. Schrum had a legal interest in the property at the time of the trespass, including both ownership and possession.

182. The unlawful entry upon Schrum's property resulted in damages, including, but not limited to, the slashing of the tires on Schrum's truck.

WHEREFORE, Plaintiff Randall Schrum respectfully requests that this Court enter judgment in his favor and against Defendants John and Jane Does Nos. 1-20, as to Count VIII of the Complaint, for damages, including, but not limited to, actual damages resulting from Defendants' violations; for punitive damages; for nominal damages; for attorney's fees and costs of suit; for injunctive relief to temporarily, preliminarily and permanently enjoin the bad acts of Defendants John and Jane Does nos. 1-20, set forth herein; and for all just and further relief as this Court deems appropriate.

## COUNT IX – TRESPASS (CHATTELS)
### (Against John and Jane Does Nos. 1-20)

183. Schrum restates and realleges all of the foregoing allegations, as if fully set forth herein.

184. Count IX of this Complaint is asserted against the yet to be identified John and Jane Does Nos. 1-20.

185. Defendants intentionally intermeddled and/or interfered with Schrum's personal property, specifically, Schrum's truck.

186. Defendants' conduct was without Schrum's consent.

34

SL 7004745.4

187.    Defendants' conduct resulted in damage to Schrum's personal property; specifically, Defendants slashed the tires on Schrum's truck on two (2) occasions, on or about April 2, 2025 and April 8, 2025, as more fully described above.

188.    As a direct and proximate result of Defendants' conduct, Schrum has incurred damages.

WHEREFORE, Plaintiff Randall Schrum respectfully requests that this Court enter judgment in his favor and against Defendants John and Jane Does. Nos. 1-20, as to Count IX of the Complaint, for damages, including, but not limited to, actual damages resulting from Defendants' violations; for punitive damages; for nominal damages; for attorney's fees and costs of suit; for injunctive relief to temporarily, preliminarily and permanently enjoin the bad acts of Defendants John and Jane Does Nos. 1-20 set forth herein; and for all just and further relief as this Court deems appropriate.

## COUNT X – CIVIL CONSPIRACY
### (All Defendants)

189.    Schrum restates and realleges all of the foregoing allegations, as if fully set forth herein.

190.    The named Defendants and other yet to be identified John and Jane Does Nos. 1-20 have engaged in a persistent and ongoing campaign to threaten, harass, and intimidate Schrum, his family, and other members of the newly formed Refuge Ridge, established by Schrum and other former members of Hilltop Fellowship.

191.    Defendants have conspired and agreed with one another to wage this campaign against Schrum, his family, and other members of Refuge Ridge, through a common design of threats, intimidation, defamation, destruction to property, trespassing, false reports to law enforcement, and other similar illegal and/or tortious conduct.

35

SL 7004745.4

192.   Defendants' conspiracy constitutes concerted action to achieve an unlawful purpose: to defame Schrum and to intimidate Schrum and other members of Refuge Ridge from exercising their freedom of religion, freedom of association, freedom of assembly, and freedom of speech.

193.   Defendants' conspiracy is also characterized by unlawful means, including, but not limited to, harassment, intimidation, destruction of property, illegal trespass, and making false statements to law enforcement and the DCS.

194.   Defendants have engaged in many overt acts in furtherance of their conspiracy, as more fully described above.  Defendants' overt acts, as described in the factual allegations and the individual counts of this Complaint, include, but are not limited to, the conduct supporting the following claims: *Conspiracy to Violate Rights and Privileges in Violation of 42 U.S.C. 1985(3)* (**Count I**); *Conspiracy to Obstruct Justice in Violation of 42 U.S.C. 1985(3)* (**Count II**); *Violation of Tennessee Human Rights Act (Section 4-21-701)* (**Count III**); *Defamation* (**Count IV**); *False Light* (**Count V**); *Intentional Infliction of Emotional Distress* (**Count VI**); *Negligent Infliction of Emotional Distress* (**Count VII**); *Trespass to Real Property* (**Count VIII**); and *Trespass to Chattels* (**Count IX**).

195.   As a result of the conduct described above, Schrum has incurred damages, including but not limited to, physical and emotional damage, damage to property, financial loss, and other damages.

196.   Schrum and his family have also been intimidated from engaging in protected conduct under the United States Constitution and the Constitution of the State of Tennessee, including, but not limited to, the free exercise of their religion, freedom of association, freedom of assembly, and freedom of speech.

36

WHEREFORE, Plaintiff Randall Schrum respectfully requests that this Court enter judgment in his favor and against Defendants on Count X of the Complaint; for damages, including, but not limited to, actual damages resulting from Defendants' violations; for punitive damages; for nominal damages; for attorney's fees and costs of suit; for injunctive relief to temporarily, preliminarily and permanently enjoin the bad acts of Defendants set forth herein; and for all just and further relief as this Court deems appropriate.

## PRAYER FOR RELIEF

In addition to the relief requested above for each specific count, Plaintiff demands the following for each and every count alleged:

A.      A jury of 12 to try this matter;

B.      A judgment in his favor for each and every count referenced above;

C.      For compensatory damages of not more than $200,000.00 and punitive damages of not more than $400,000.00;

D.      For costs, expenses and reasonable attorney's fees in pursuing this matter; and

E.      For any and all relief, in equity or in law, to which he is entitled.

SL 7004745.4

Respectfully submitted,

By:/s/ Charles N. Yarbrough
    Charles N. Yarbrough, BPR No. 037836
    Spencer Fane LLP
    511 Union St, Ste 1000
    Nashville, TN  37219
    (615) 238-6300
    cyarbrough@spencerfane.com

    and

    Arthur Gregg, *pending Pro Hac admission*
    Mitchell Martin, *pending Pro Hac admission*
    Spencer Fane LLP
    1 North Brentwood Blvd, Ste 1200
    St. Louis, MO  63105
    (314) 333-3980
    agregg@spencerfane.com
    mmartin@spencerfane.com

38

SL 7004745.4